| ¡PETTIGREW, Judge.
In this case, D.B.C. and C.B.C. (hereinafter collectively referred to as “appellants”) appeal the dismissal of their petition for an intrafamily adoption of the minor child, D.M.B. For the reasons that follow, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
C.B.C. and T.O. began dating in 1994, and a child, D.M.B., was conceived during their relationship. Shortly after becoming pregnant, C.B.C. left the residence she and T.O. had shared and eventually moved back to her parents’ home in Port Allen, Louisiana. C.B.C. was living with her par *451 ents when D.M.B. was born on April 1, 1995.
The reason for the breakup of the relationship between C.B.C. and T.O. is in dispute. C.B.C. claims that T.O. told her to go because he did not love her or trust her enough to marry her. C.B.C. maintains that she never told T.O. that he was not the father of D.M.B. T.O. alleges that C.B.C. wanted to leave and in fact told him that the child she was carrying was not his. Nonetheless, it is clear that after C.B.C. left T.O., the two had no further contact until they saw each other at a New Year’s Eve party in 1995, nine months after D.M.B. was born. C.B.C. and T.O. agree that D.M.B.’s paternity was not discussed at that time. There was apparently one other instance when T.O. attempted to phone C.B.C. However, no contact was actually made because T.O. left a message with C.B.C.’s mother, and C.B.C. did not return the call.
Appellants met in the summer of 1996 and were married approximately one year later. Of that marriage, two children were born. In the fall of 1998, appellants decided to pursue an intrafamily adoption with regard to D.M.B., who was then three and one-half years old. They requested that T.O. sign a Voluntary Act of Surrender for the adoption. T.O. refused to sign anything until such time as the paternity of D.M.B. was confirmed by DNA testing. While the DNA test results were pending, appellants filed a petition for intrafamily adoption, naming T.O. as the “alleged natural father” of D.M.B. Shortly thereafter, the parties were notified that the DNA testing had established a 99.999 percent probability that T.O. was the biological father of D.M.B.
|aT.O. subsequently filed an answer objecting to the adoption, and the matter was scheduled for a termination of parental rights hearing.[1] After several continuances, the hearing was ultimately conducted on April 6, 2000. Prior to submitting evidence at the hearing, counsel for appellants indicated that if T.O.’s parental rights were not terminated, he would then go forward with a hearing pursuant to La. Ch.Code art. 1245 to show that T.O.’s consent to the adoption was not necessary.
After hearing the evidence, the trial court decided not to terminate T.O.’s parental rights finding that T.O. did not know that D.M.B. was his child until he was notified that appellants wanted him to surrender his parental rights for the intra-family adoption of D.M.B. The trial court concluded:
She [C.B.C.] was as much at fault for not contacting him . [T.O.] about his daughter as he was about not maybe contacting her to pursue it but I find her omissions more egregious than his because she knew, at least she said she knew, that it was his child all along. But I believe he did not know and that’s the ruling of the Court on that issue.
Once the court made its decision not to terminate T.O.’s parental rights, counsel for appellants called their expert, Dr. William C. Calkins, to testify relative to the best interests of D.M.B. After Dr. Calkins finished his testimony, the hearing was stopped because of the lateness of the hour and scheduled to continue on May 11, 2000.
At the hearing on May 11, 2000, counsel for T.O. orally moved for dismissal of the petition on the grounds that since T.O.’s *452 parental rights had not been terminated and he had not consented to the adoption, the adoption could not go forward.[2] Counsel for appellants argued that he should be allowed to submit evidence pursuant to Article 1245 to prove that T.O.’s consent was not necessary for the adoption to be finalized. Counsel acknowledged, however, that even if the court were to conclude that T.O.’s consent could be dispensed with, the court would still have to determine whether the intrafamily ¡¿adoption was in D.M.B.’s best interest. After hearing argument from the parties and considering the statutes and jurisprudence, the trial court concluded that the intrafamily adoption could not go forward without T.O.’s consent. The court ended the hearing, which had begun with the testimony of Dr. Calkins on April 6, 2000, expressing concern that the parties might “rehash the same stuff’ if the hearing were to continue. On May 16, 2000, the court signed a judgment ordering (1) that T.O.’s parental rights not be terminated, and (2) that the intrafamily petition of adoption filed by appellants be dismissed “as the biological father’s consent would be necessary to grant said adoption and this consent has been withheld.” The instant appeal followed.
TERMINATION OF PARENTAL RIGHTS
The first issue raised for our review is whether the trial court erred in not terminating T.O.’s parental rights. In brief, appellants argue that T.O. was required to prove that he had manifested a substantial commitment to his parental responsibilities and that he would be fit to parent D.M.B. Appellants assert that any action or inaction on the part of C.B.C. did not rise to the level of “thwarting” under La. Ch.C. art. 1138(B)(2) and that T.O. failed to prove his substantial commitment to his parental responsibilities as is required by Article 1138.
Article 1138 sets forth the burden of proof and evidentiary requirements for a hearing of an alleged or adjudicated father’s opposition to the adoption of his child. The article requires the court to decide if the father has established or forfeited his parental rights. The court is mandated to consider the father’s fitness and his commitment to parental responsibilities, including his attempts to establish or maintain a relationship with the child. Article 1138 provides as follows:
A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
B. Proof of the father’s substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, | .¡contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that *453 he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
C. The child and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article.
D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.
E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent and shall order the child to be in his legal custody. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.
Having so noted, we turn now to a review of the trial court’s findings with regard to the evidence submitted by the parties. As an appellate court, we cannot set aside the trial court’s factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
The trial court’s factual findings in the present case are based largely on credibility determinations. We have thoroughly reviewed the entire record in this matter and find 1 fithat a reasonable basis exists for the trial court’s findings. There was conflicting testimony from T.O. and C.B.C. regarding whether T.O. knew of D.M.B.’s paternity prior to the initiation of the adoption proceedings. The trial court listened to the evidence and made certain credibility determinations that must be afforded “great deference.”
After considering the evidence in its entirety, we find no manifest error in the trial court’s conclusion that T.O.’s parental rights should not be terminated. Thus, we affirm that portion of the trial court’s May 16, 2000 judgment.
DISMISSAL OF PETITION FOR INTRAFAMILY ADOPTION
In their second assignment of error, appellants contend that the trial court erred in dismissing their petition without first affording them the opportunity to present evidence under La. Ch.C. art. 1245 as to whether T.O.’s consent was necessary for the adoption. Appellants assert that the evidence they presented at the April 6, 2000 hearing was limited by La. Ch.C. art. *454 1138(C) to rebuttal evidence on the issues raised by T.O. in support of his opposition to the adoption.
As set forth in Article 1138(E), once the court finds that an alleged father has established his parental rights, “the court shall declare that' no adoption may be granted without his consent.” The general parental consent provisions of the Louisiana Children’s Code are found in Article 1193, which provides, in part, that consent to the adoption of a child “shah be required” of an “alleged father of the child who has established his parental rights in accordance with Chapter 10 of Title XI [of the Louisiana Children's Code].” However, with respect to intrafamily adoptions, parental consent may be dispensed with in accordance with Article 1245,[3] which provides as follows:
A. The consent of a parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B, C, or D.
B. When a grandparent, aunt, or uncle has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
|7(1) A parent has refused or failed to comply with a court order of support for a period of one year.
(2) A parent is a nonresident of this state and has failed to support the child for a period of one year after a judgment awarding custody to the grandparent, aunt, or uncle.
(3) A parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
C. When a parent is married to a stepparent petitioner and both of the following conditions exist:
(1) The parent married to the stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction.
(2) The noncustodial parent is a nonresident of this state and has failed to support the child for a period of one year after the judgment awarding custody.
D. When a parent lawfully exercising actual custody of the child is married to a stepparent petitioner and either of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
It is clear that under Article 1245, even though T.O.’s parental rights were not terminated, his consent to this adoption may still be dispensed with if appellants can prove that he “has failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.” While we recognize that some of the evidence necessary to prove this element of Article 1245(D) may overlap with the evidence already in the record from the Article 1138 hearing, appellants’ right to present such evidence is preserved by the clear expression of the Louisiana Legislature that parental consent may not always be necessary for an intrafamily adoption.
*455 Based on our review of the record, we find legal error in the trial court’s dismissal of appellants’ petition without allowing them the opportunity to continue with the hearing and present evidence relative to Article 1245(D). Accordingly, that portion of the trial court’s May 16, 2000 judgment dismissing appellants’ petition for intra-family adoption is reversed, and the matter is remanded to the trial court'for a hearing to allow appellants to ^present evidence that T.O.’s consent is not necessary for the adoption of D.M.B. to be finalized.
CONCLUSION
For the above and foregoing reasons, that portion of the trial court’s judgment ordering that T.O.’s parental rights not be terminated is affirmed. We hereby reverse the remainder of the trial court’s judgment and remand the matter for further proceedings not inconsistent with this opinion. All costs associated with this appeal are assessed one-half against T.O. and one-half against appellants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GONZALES, J., concurs.

. T.O. objected to the burden of proof being placed on him, arguing instead that appellants should bear the burden of proof with regard to the adoption of D.M.B. T.O.'s subsequent application for supervisory writs with this court was not considered because the application was untimely.

. According to the record, counsel for T.O. submitted a memorandum to the court setting forth his position on this issue. We note, however, that this memorandum does not appear in the record and was apparently only given to counsel for appellants on the morning of the hearing.

. Article 1245 was amended effective January 1, 2000, by La. Acts 1999, No. 1062, § 4. According to the Official Comment to Article 1245, the article "has been simplified and made consistent with the parallel policies of the 'abandonment' ground in a certification for adoption proceeding.”